## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ARTHUR DAVIS #320465**                     **CIVIL ACTION**

**versus**                                   **NO. 07-6389**

**N. BURL CAIN, WARDEN**                      **SECTION: "A" (3)**

## REPORT AND RECOMMENDATION

    This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Arthur Davis, is a state prisoner incarcerated at the Louisiana State Penitentiary, Louisiana.  On November 20, 2003, he was convicted of second degree murder in violation of La.Rev.Stat.Ann. § 14:30.1.[2]  On February 11, 2004, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[3]  On June 10, 2005, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari and/or review which was denied on February 10, 2006.[5]

On or about October 5, 2006, petitioner filed with the state district court an application for post-conviction relief.  That application was denied on February 13, 2007.  He next filed with the Louisiana First Circuit Court of Appeal an application for a supervisory writ of review

---

[2] State Rec., Vol. V of V, trial transcript, p. 616; State Rec., Vol. I of V, minute entry dated November 20, 2003; State Rec., Vol. III of V, jury verdict form.

[3] State Rec., Vol. V of V, transcript of February 11, 2004, p. 5; State Rec., Vol. I of V, minute entry dated February 11, 2004.

[4] State v. Davis, No. 2004-KA-1773 (La. App. 1st Cir. June 10, 2005).  The state court record provided to this Court concerns only the original proceedings in the state district court.  However, petitioner attached to his federal application what he purports are copies of the relevant documents relating to his appeal and post-conviction proceedings.  See Rec. Doc. 1.  The respondent has not challenged the authenticity of those documents.

[5] State v. Davis, 924 So.2d 164 (La. 2006) (No. 2005-K-1799).

which was denied on May 14, 2007.[6] He then filed with the Louisiana Supreme Court an application

for a writ of certiorari which was denied on May 9, 2008.[7]

While that writ application was pending, petitioner filed this federal application for

*habeas corpus* relief on September 4, 2007.[8] The proceeding was initially stayed pending resolution

of the state writ application;[9] however, the case has now been reopened.[10] In this federal proceeding,

petitioner raises the following claims:

1. The trial court erred in denying petitioner's request for post-
   conviction DNA testing pursuant to La.C.Cr.P. art. 926.1;

2. Petitioner received ineffective assistance of counsel;

3. The trial court lacked jurisdiction because petitioner's
   indictment was invalid;

4. There was insufficient evidence to support petitioner's
   conviction;

5. The trial court erred in allowing prejudicial, unqualified
   expert testimony;

---

[6] State v. Davis, No. 2007-KW-0416 (La. App 1ˢᵗ Cir. May 14, 2007). The Court of Appeal likewise refused petitioner's request for rehearing. State v. Davis, No. 2007-KW-0416 (La. App 1ˢᵗ Cir. June 20, 2007).

[7] State *ex rel.* Davis v. State, 980 So.2d 681 (La. 2008).

[8] Rec. Doc. 1. The state does not challenge the timeliness of petitioner's federal application.

[9] Rec. Doc. 14.

[10] Rec. Doc. 17.

6.      The prosecutor engaged in misconduct by making improper

comments;

7.      The trial judge was biased; and

8.      The trial judge erred in denying petitioner's motion to

suppress his pretrial statement.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact,

questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the

claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481,

485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

§ 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
have independent meaning.  A federal habeas court may issue the
writ under the "contrary to" clause if the state court applies a rule
different from the governing law set forth in our cases, or if it decides
a case differently than we have done on a set of materially
indistinguishable facts.   The court may grant relief under the
"unreasonable application" clause if the state court correctly
identifies the governing legal principle from our decisions but

> unreasonably applies it to the facts of the particular case.  The focus
> of the latter inquiry is on whether the state court's application of
> clearly established federal law is objectively unreasonable, and we
> stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an
> unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1); <u>Hill</u>, 210 F.3d at 485.

Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> On May 5, 2002, the seventy-five-year-old victim, "Aunt
> Mammie" Anthony, was strangled and beaten to death.  Her bloody
> body was discovered in the locked trunk of her vehicle parked
> approximately 100 yards from her burning home in Loranger.  The
> electrical cord used to strangle her was still tied around her neck.  An
> autopsy indicated she had not suffered from smoke inhalation.
>    Firefighters found the front and back doors of the victim's
> home locked.  An examination of the interior of the home revealed
> the drawers of her bedroom dresser had been pulled out, the clothes
> in the drawers had been dumped on her bed, and a set of dentures and
> a necklace had been dropped near the front door.
>    The defendant was the victim's next-door neighbor.  When
> firefighters arrived at the scene at approximately 7:10 a.m., and prior
> to the discovery of the victim's body, the defendant asked numerous
> questions about the collection of evidence, including the collection
> of fingerprints.
>    When Kathy Anthony, the victim's daughter-in-law, arrived
> at the victim's home at approximately 7:20 a.m., she observed the
> defendant had wet hair, was only wearing jeans, and looked as if he
> had just come out of the shower.  The defendant entered the victim's

burning home, threw things out of the window, and asked, "Where's Aunt Mammie?"

After the fireman had the fire under control, the defendant removed photographs from the front room of the victim's home for her family. He also approached Tangipahoa Parish Sheriff's Office Detective Jimmy Hyde, told him the situation was suspicious, that he (the defendant) believed Millard Anthony, the victim's adopted son, was involved, and pointed out the driver's license of Millard Anthony lying under a tree in the victim's yard. The defendant also alleged he had heard Millard Anthony and his girlfriend, Vickie "Chocolate" Collins, were going to burn down the victim's home. Detective Hyde felt the defendant was nervous and acting suspiciously.

Police investigation revealed Millard Anthony was incarcerated at the time of the offense, and Vickie Collins had an alibi for her whereabouts from approximately 8:30 a.m. on May 4, 2002, until the time the police arrived on the scene on May 5, 2002.

On May 5, 2002, after being duly advised of his **Miranda** rights, the defendant was questioned by the police. He gave conflicting accounts of his whereabouts and the clothing he was wearing on May 4 and May 5, 2002. When questioned by Tangipahoa Parish Sheriff's Office Detective (Lieutenant) Roy Albritton, the defendant claimed he was at a crawfish boil at his house on May 4, 2002, from approximately 12:30 p.m. or 1:00 p.m. until dark, with the exception of a trip to Hammond to buy seasoning for the crawfish. The defendant claimed that after the crawfish boil, he picked up Wanda Puckett and took her back to Daniel Reid's residence, behind the defendant's residence, to use crack cocaine and/or marijuana. The defendant claimed that after the drugs were finished, Reid, Puckett, and he left Reid's residence, purchased more drugs, returned to Reid's residence, and used the drugs. The defendant claimed he left Reid's residence and went home at approximately 2:00 a.m. He claimed he saw the lights on at the victim's house and called her to check on her well-being. He claimed he spoke to the victim, found out "everything was okay," and returned to Reid's residence. The defendant claimed at approximately 6:45 a.m. on May 5, 2002, he noticed the fire at the victim's home while he was in his living room after taking his wife to work.

Roxanne Davis, the defendant's wife, told Detective Albritton the defendant drove her to work at approximately 6:05 a.m. on May 5, 2002. She testified the defendant surrendered his wallet to her

before being booked into jail, and the wallet contained approximately $80.

In an audiotaped statement given to Tangipahoa Parish Sheriff's Office Detectives McDowell and Apperson at 7:38 p.m.[FN] on May 5, 2002, the defendant claimed Vickie Collins called him and told him to remove the victim's car from her driveway so that it would appear that someone had robbed the victim's home. The defendant claimed he drove the car out of the victim's driveway, exited the vehicle, and ran through the woods back to his home. However, he also claimed the victim's home was already on fire when he found the victim face-down in the living room, "tied around her neck." He claimed he picked the victim up and put her in the trunk of her vehicle because he "couldn't let [the victim] lay there and die and bleeding." He stated he believed Vickie Collins had robbed the house because the victim did not like Collins. He claimed three days earlier, Collins offered him crack cocaine and "a lot of money," telling him, "it's well worth it to you if you get Aunt Mammie for me." Detective McDowell testified the defendant made his statements after Detective McDowell asked the defendant if he was aware that fingerprints could be recovered from a victim's body.

> [FN] On the audiotape of the interview, Detective McDowell stated the interview began at 7:38 a.m. and ended at 7:50 p.m. At trial, however, Detective McDowell testified the interview actually began at 7:38 p.m.

A search and rescue dog, trained to detect human scent, signaled that he detected the defendant's scent on the driver's door handle of the victim's car, on the front left of the victim's car, from the victim's car to the front door of the victim's home, in the front room of the victim's home, and in the back bedroom of the victim's home. The dog was provided the defendant's scent from the defendant's boot after he was in police custody.

Daniel Reid testified that he lived in the trailer behind the defendant's house and attended a crawfish boil at the defendant's residence on May 4, 2002. At approximately nightfall, Reid returned to his trailer and let in Puckett, whom the defendant had dropped off. Thereafter, at the defendant's request, Reid drove the defendant and Puckett "to go get some money and some crack." They returned to Reid's trailer at approximately 10:30 p.m. or 11:00 p.m. The defendant left Reid's trailer to get more crack cocaine at 11:30 p.m.

or 12:00 a.m. and returned approximately an hour later.  They left again to get more crack cocaine at approximately 2:30 a.m. or 3:00 a.m. and returned approximately an hour later.  They left again to get more crack cocaine and returned at approximately 5:15 a.m.  The defendant then left Reid's trailer to take his (the defendant's) wife, Roxanne, to work.  The defendant told Reid he would be right back after dropping off Roxanne.  Reid expected the defendant to return and take Puckett home.   At approximately 6:15 a.m., after the defendant did not return from taking his wife to work, Reid looked out of his window, looking for the defendant. He saw the defendant exit his back door, walk around a fence, walk into the victim's yard, and walk towards the road and the front of the victim's home.  The defendant did not return to Reid's trailer.

Wanda Lou Puckett testified similarly to Reid.  She added that the defendant called the victim at approximately 3:00 a.m. on May 5, 2002, and asked to borrow $20.  Puckett claimed that in response to what the victim told him, the defendant stated, "All right, thank you anyway.  I'm sorry I disturbed you."  Puckett denied having any contact with the victim on May 5, 2002, and denied knowing of anyone who had contact with the victim on that date.

Harvey Anthony, the victim's brother-in-law, testified he passed by the victim's home at 3:00 a.m. on May 5, 2002.  The home's lights were all turned on, and the victim's car was under the carport.

Barbara Whitaker testified the defendant knocked on her door and asked to borrow money at approximately 4:20 a.m. on May 5, 2002.  After Whitaker let the defendant into her home and told him she did not have any cash, he repeatedly asked her, "Are you sure?"  Whitaker felt the defendant was anxious.  Ultimately, the defendant thanked Whitaker and left.

Robert Bicknell testified he was driving his daughter and his sister-in-law to the grocery store at either 7:00 a.m. or 8:00 a.m. on May 5, 2002, when his daughter saw the defendant "a little over a football field" away from the victim's home.  The defendant was quickly walking towards his house and pulling his T-shirt off as he walked.

Betty Bankston, the victim's daughter, testified that a couple of weeks before the victim's death, the victim had told her the defendant had been borrowing too much money from her, and she was not going to lend him money anymore.

The defendant testified at trial and denied either killing the victim or setting her house on fire.  He conceded he used marijuana

and crack cocaine with Reid and Puckett early on May 5, 2002, and left Reid's trailer to get more drugs on at least two occasions that morning. He claimed he left Reid's trailer well before 6:00 a.m. to take his wife to work. He gave the following account of what happened when he returned home. He noticed a white car pulled up to the victim's home, and shortly thereafter, saw smoke outside of his window. He saw a two-tone brown car, Vickie Collins's car, parked in the middle of the victim's driveway, which he commented was the closest the victim would allow "Vickie" to get to the victim's home. He put his baby in her crib and went to the victim's home to investigate. Both the white and the brown cars had left and the victim's car was backed up to her back door. He knocked on the front and back doors and when he received no answer, he turned the front doorknob and found the door unlocked. There was smoke "half way down the room." He discovered the victim lying face-down in the living room and shook her. When she did not respond, he turned her over and noticed blood coming from her mouth and nose. He carried her out of the house and to her car. He put her in the trunk because the front of her vehicle was too crowded with, among other things, a VCR, and the back of the vehicle was too small. He drove the victim to a substation to get help, but returned when he found no one present at the substation. He pulled the car over, got out, and ran back home. He claimed he was only wearing his pants. After the fire department arrived, he went into the victim's home to retrieve "pictures[.]" He retrieved pictures from the living room, the hall, and the bedroom. He claimed he failed to alert the police or firefighters to the presence of the victim in the trunk of the car because he did not want to get involved or shot.

The defendant also claimed that on May 1, 2002, Vickie Collins handed him "two packets" in exchange for listening to her. He claimed Collins told him that she and Millard needed him to help "take her out." He claimed he returned the packets to Collins and told her, "No way – hell no[.]"[11]

---

[11] State v. Davis, No. 2004-KA-1773, at pp. 2-6 (La. App. 1st Cir. June 10, 2005).

DNA Testing

Petitioner's first claim is that the trial court erred in denying his request for post-conviction DNA testing pursuant to La.C.Cr.P. art. 926.1. That claim has no merit for the following reasons.

To the extent that petitioner is arguing that the state courts misapplied state law, that claim simply is not cognizable in this forum. Federal *habeas corpus* relief may be granted only to remedy violations of the *federal* Constitution and laws of the United States; mere violations of *state* law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983); see also Hansbro v. Cain, Civ. Action No. 04-2284, 2006 WL 3488729, at *7 (W.D. La. Oct. 20, 2006) (Hornsby, M.J.) ("This court is not concerned with whether the state courts properly applied Article 926.1 because federal habeas relief does not lie for errors of state law.") (adopted by Stagg, J., on Dec. 1, 2006), certificate of appealability denied, No. 07-30007 (5th Cir. May 9, 2008).

To the extent that petitioner is arguing that the denial violated federal law, he is wrong. There is no federal constitutional right to post-conviction DNA testing. See, e.g., McElhaney v. McKee, No. 1:06-CV-900, 2007 WL 851664, at *1 (W.D. Mich. Mar. 16, 2007); Penley v. Director, TDCJ-CID, Civ. Action No. 4:03cv301, 2006 WL 2504902, at *6 (E.D. Tex. July 11, 2006) (Bush, M.J.), adopted, 2006 WL 2505174 (E.D. Tex. Aug. 28, 2006) (Schell, J.); Lang v. Dretke, No. 3:05-CV-1499-L, 2005 WL 2219234, at *2 n.2 (N.D. Tex. Sept. 8, 2005) (Sanderson, M.J.) (adopted on Sept. 29, 2005, by Lindsay, J.); Figueroa v. Dretke, Civ. Action No. 4:05CV074Y, 2005 WL 1108109, at *1 (N.D. Tex. May 5, 2005) (Bleil, M.J.), adopted, 2005 WL

1320143 (N.D. Tex. June 1, 2005) (Means, J.); <u>Shenouda v. Breslin</u>, No. 03 CV 5767, 2004 WL 1918805, at *6 (E.D.N.Y. Aug. 27, 2004).

Further, in any event, claims regarding alleged errors in state post-conviction proceedings are not cognizable in federal *habeas corpus* proceedings.  <u>Nichols v. Scott</u>, 69 F.3d 1255, 1275 (5th Cir. 1995); <u>see also</u> <u>Morris v. Cain</u>, 186 F.3d 581, 585 n.6 (5th Cir. 1999); <u>Turner v. Carlton</u>, No. 2:05-CV-102, 2008 WL 2169519, at *2 (E.D. Tenn. May 22, 2008); <u>Campbell v. Cain</u>, Civ. Action No. 06-3983, 2007 WL 2363149, at *2 n.23 (E.D. La. Aug. 15, 2007).

Lastly, to the extent that petitioner argues in this claim that he is actually innocent, it is clear that "actual-innocence is *not* an independently cognizable federal habeas claim." <u>Foster v. Quarterman</u>, 466 F.3d 359, 367 (5th Cir. 2006) (emphasis in original), <u>cert. denied</u>, 127 S.Ct. 2099 (2007); <u>see also</u> <u>Perkins v. Quarterman</u>, 254 Fed. App'x 366, 374 (5th Cir. 2007), <u>cert. denied</u>, 128 S.Ct. 2503 (2008).

Ineffective Assistance of Counsel

Petitioner next claims that his trial counsel was ineffective.   In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See</u> <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below

an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. <u>Strickland</u>, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court determination rejecting such a claim unless petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Id.; see also 28 U.S.C. § 2254(d)(1).

In his federal application, petitioner contends that his counsel was ineffective in eight respects. The Court will address each of those contentions.

First, petitioner claims that his counsel was ineffective in failing to properly file an application for supervisory writs with respect to the trial court's denial of the motion to suppress. The record reflects that the Louisiana First Circuit Court of Appeal rejected as deficient the original writ application challenging the trial court's ruling; however, the court granted counsel leave to file a corrected application.[12] Counsel then filed a corrected writ application, which the Court of Appeal denied after a thorough review of the merits of the claim.[13] Therefore, even if counsel performed deficiently with respect to the first application, petitioner ultimately suffered no prejudice because the corrected application was submitted and fully considered on the merits. Therefore, this claim necessarily fails.

_____

[12]   State v. Davis, No. 2003 KW 0107 (La. App. 1st Cir. Feb. 24, 2003). A copy of that ruling is attached as an exhibit to petitioner's federal application.

[13]   In his state post-conviction application, petitioner opined that the court failed to consider the corrected application on the merits. That is incorrect. In the subsequent direct appeal, the court made clear that it had denied the application on the merits. See State v. Davis, No. 2004-KA-1773, at p. 9 ("The defense applied to this court for writs of certiorari, prohibition, and mandamus, and following a thorough review of the issue, writs were denied.").

Second, petitioner claims that his counsel was ineffective in failing to adequately communicate with petitioner prior to trial and prepare for his defense. Regarding the allegedly inadequate communication, even if the Court were to assume that counsel performed deficiently in that respect, *a fact which has by no means been established*, petitioner nevertheless has failed to show any benefit whatsoever that would have resulted from better communication. Accordingly, he has not shown that there is a reasonable probability that, but for counsel's inadequate communication, the result of the proceeding would have been different. Therefore, that claim fails because he has shown no resulting prejudice. Regarding the lack of preparation, petitioner identifies no necessary preparation which was lacking and no potentially viable defense that counsel eschewed. Therefore, petitioner has fallen woefully short of meeting his burden to establish that his counsel performed deficiently or that prejudice resulted. Sometimes, as is evidently the case here, when representing a seemingly guilty client, counsel's only choice is to vigorously test the state's case and argue to the jury that the state has failed to carry its burden of proving that the accused is guilty beyond a reasonable doubt. Simply because counsel was unable to fashion a nonexistent defense out of whole cloth does not mean that he was ineffective. Accordingly, that claim also fails.

Third, petitioner claims that his counsel was ineffective in failing to have independent DNA and fingerprint tests conducted. That claim fails for at least two reasons. First, petitioner has not met his burden to show "what results the scientific tests would have yielded" and that those results would in fact have been favorable to him. See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). Second, in analyzing an ineffective assistance of counsel claim, "[t]actical and strategical decisions of counsel if based on informed and reasoned practical judgment will not be second-

guessed." Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997); see also Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999). In this case, counsel chose not to have DNA and fingerprint tests performed where those tests could well have confirmed beyond doubt petitioner's involvement and yet still yielded no evidence of the involvement of anyone else. A tactical decision not to run the risk of compounding the damning evidence against petitioner by securing such tests was hardly unreasonable. See Thompson v. Cain, 161 F.3d 802, 813-14 (5th Cir. 1998).

Fourth, petitioner claims that his counsel was ineffective in eliciting damaging information during cross-examination. Although he does not explain this claim in his federal application, he argued in his state post-conviction application that counsel elicited during the cross-examination of Alexandros Vara, the state's forensic expert in DNA analysis, "damaging information" regarding the lack of fingerprint evidence. Petitioner notes that Vara testified at trial that he was not the person who performed the fingerprint analysis in the instant case;[14] however, counsel nevertheless questioned Vara regarding that evidence. This Court agrees that Vara was not a proper witness regarding that evidence because he had no firsthand knowledge of it. That said, however, Vara's testimony regarding the evidence was not "damaging" as petitioner contends. Rather, Vara testified that, to his knowledge, petitioner's fingerprints were not found on any of the evidence collected.[15] If the testimony was of any value at all, it was more beneficial to the defense

---

[14]   State Rec., Vol. IV of V, trial transcript, p. 283. The fingerprint analysis was done by Jackie Hohensee. State Rec., Vol. IV of V, trial transcript, p. 293.

[15]   State Rec., Vol. IV of V, trial transcript, pp. 283-85.

than it was damaging.  Therefore, petitioner simply was not prejudiced by counsel's performance in this respect.

Fifth, petitioner claims that his counsel was ineffective in failing to subpoena expert witnesses for the defense.  However, the United States Fifth Circuit Court of Appeals has noted:

> [U]nsupported claims regarding [an] uncalled expert witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel.

Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).  To show the prejudice required to support such a claim, a petitioner must show that the expert's testimony would have been favorable.  Id. Petitioner furnished neither the state court nor this Court with evidence to show that any expert would have reached conclusions that were beneficial to the defense.  Therefore, petitioner has failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to secure such expert witnesses.

Sixth, petitioner claims that his counsel was ineffective in failing to make contemporaneous objections and thereby preserve "significant issues" for appellate review. However, it has been noted:

> Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance.  In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.

Rios-Delgado v. United States, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000); see also Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Forman v. Cain, Civ. Action No. 07-4200, 2008 WL 1746710, at *7 (E.D. La. Apr. 14, 2008).  The United States Supreme Court has made clear that

federal *habeas* courts are not to second-guess such decisions through the distorting lens of hindsight but instead are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance.  <u>Strickland</u>, 466 U.S. at 689.  Moreover, even where an objection might have some small chance of succeeding, an attorney is allowed to make a strategic choice to forego such an objection to avoid antagonizing the jury.  See <u>Wiley v. Puckett</u>, 969 F.2d 86, 102 (5th Cir. 1992). Where, as here, counsel's objections may well have invited the jurors to focus their attention on unfavorable matters, counsel can hardly be deemed to have performed ineffectively in choosing to avoid that unnecessary risk.[16]

_____

[16] Although petitioner does not specify in his federal application what objections he believes should have been made, he did give examples in his state post-conviction application.  Reviewing those examples, it is clear that, in any event, petitioner has not shown that prejudice resulted.  For the following reasons, he has failed to demonstrate that there is a reasonable probability that the result of the proceeding would have been different if only counsel had only made the suggested objections and the issues had been preserved for appeal.  First, he suggests that counsel should have objected to the indictment because it was not returned in open court; however, as noted later in this opinion, the indictment *was* returned in open court and this matter was fully considered on the merits by the appellate court.  Second, petitioner further suggests that counsel should have objected to improper comments by the prosecutor; however, as also noted later in this opinion, the prosecutor's comments were not improper.  Third, petitioner opines that counsel should have objected to the prosecution calling Betty Bankston as a witness; however, Bankston was a proper witness with relevant testimony regarding petitioner's possible motive for the killing.  Fourth, petitioner argues that counsel should have objected to various hearsay testimony from Deputy Albritton; however, that testimony was largely inconsequential and clearly had no effect on the verdict.  Fifth, petitioner argues that counsel should have objected to petitioner's wife being called to testify without being advised of her right to assert a spousal privilege; however, there is no evidence whatsoever that his wife was not in fact told of the privilege or would have chosen to invoke it.  See <u>State v. Taylor</u>, 642 So.2d 160 (La. 1994) ("[La. Code Evid. 505] does not prohibit a spouse from voluntarily taking the stand against the defendant spouse.").  Sixth, petitioner suggests that counsel should have objected to a juror taking notes without permission pursuant to La.C.Cr.P. art. 793; however, even if counsel was aware that this in fact occurred, the taking of notes is not inherently prejudicial or violative of any fundamental right of the accused so as to require reversal on appeal under state law.  <u>See, e.g.</u>, <u>State v. Ledet</u>, 298 So.2d 761 (La. 1974); <u>State v. Colbert</u>, 615 So.2d 32 (La. App. 3rd Cir. 1993).

Seventh, petitioner claims that his counsel was ineffective in failing to subpoena available lay witnesses for the defense. However, again, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans, 285 F.3d at 377 (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001). Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)). Petitioner has provided no evidence whatsoever, such as affidavits from the potential witnesses, showing that they would have been beneficial to the defense and would in fact have testified at trial. Accordingly, his claim necessarily fails.

Eighth, petitioner claims that his counsel was ineffective in failing to adequately investigate the possibility that someone else committed the offense. However, a petitioner asserting a claim for inadequate investigation bears the burden to provide *factual support* for his allegations as to what further investigation would have revealed. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005). In the instant case, petitioner has not even alleged what exculpatory information might possibly have been revealed by further investigation, much less provided factual support for those allegations. Petitioner's bald allegation that further investigation *might* have produced some still unknown evidence that someone else committed the murder is woefully inadequate to meet his burden of proof. Accordingly, this claim also fails.

Lastly, the Court notes that, in petitioner's traverse to the state's response, he references a new claim, i.e. that his counsel was ineffective in failing to advise him that he had the right not to testify at trial.[17]  Even if that claim is considered, it has no merit.[18]  As an initial matter, the Court notes that this was not petitioner's first trip to the courthouse.[19]  The Court finds suspect any contention that petitioner, a habitual offender, was unaware of his right not to testify. Nevertheless, in any event, the Court cannot ignore the fact that petitioner has never presented *any* evidence, such as an affidavit from his trial attorney, either to the state courts or to this Court to corroborate his allegations.  Without more, petitioner's bare allegations are insufficient to trigger either the granting of relief or further fact-finding by this Court.

Indictment

Petitioner's next claim is that his indictment was invalid because it was not returned in open court as required by state law.  He opines that because his indictment was invalid, the trial court therefore lacked jurisdiction.  This claim fails for two reasons.

First, the state courts held that the indictment was in fact returned in open court.  On direct appeal, the Louisiana First Circuit Court of Appeal held:

> In counseled assignment of error number 1, the defendant contends there is no indication in the record that the grand jury indictment was returned in open court, the defendant was not

---

[17]  Rec. Doc. 16.

[18]  A federal court may, in its discretion, deny an unexhausted *habeas* claim on the merits.  28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998).

[19]  Petitioner testified that he has previously been convicted of two drug offenses and several DWI offenses. State Rec., Vol. V of V, trial transcript, pp. 523-24.

properly charged, and the trial court lacked jurisdiction to consider the case. ...

LSA-C.Cr.P. art. 383 provides:

> An indictment is a written accusation of crime made by a grand jury.  It must be concurred in by not less than nine of the grand jurors, indorsed "a true bill," and the indorsement must be signed by the foreman.   Indictments shall be returned into the district court in open court; but when an indictment has been returned for an offense which is within the trial jurisdiction of another court in the parish, the indictment may be transferred to that court.

> Following the filing of the briefs in this matter, the record was supplemented with the minutes of July 1, 2002, reflecting that the indictment was returned in open court.

[This assignment] of error [is] without merit.[20]

That factual finding that the indictment was returned in open court is presumed to be correct in this federal proceeding, and this Court must defer to that finding unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Weems v. Cain, No. 97-31315, 1998 WL 611279 (5th Cir. Aug. 18, 1998).  Petitioner has presented no evidence whatsoever in support of his bald allegation that the indictment was not in fact returned in open court as the state court records show, and there is simply no basis for this Court to determine that the state court finding was unreasonable.

Second, in any event, the sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the instrument is so defective that it deprived the state court

---

[20]  State v. Davis, No. 2004-KA-1773, at pp. 6-7.  The Louisiana Supreme Court later denied petitioner's related writ application.  State v. Davis, 924 So.2d 164 (La. 2006) (No. 2005-K-1799).

of jurisdiction.  McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds

sub nom., Williams v. Collins, 12 F.3d 70 (5th Cir. 1994) (per curiam).   The United States Fifth

Circuit Court of Appeals has observed that the sufficiency of a state charging instrument is fatally

defective only when there are no circumstances under which there could be a valid conviction based

on that instrument, and that "determination can be made *only* by looking to the law of the state."

Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984) (internal quotation marks omitted) (emphasis

in original).  Where, as here, the state courts have found that the indictment was sufficient under

state law, "a federal court need not address that issue."  McKay, 12 F.3d at 68; Forman v. Cain, Civ.

Action No. 07-4200, 2008 WL 1746710, at *9 (E.D. La. Apr. 14, 2008).

<u>Sufficiency of the Evidence</u>

Petitioner next claims that there was insufficient evidence to support his conviction.

The Louisiana First Circuit Court of Appeal rejected that claim on direct appeal, holding:

> [T]he defendant contends the state failed to prove he was guilty of
> second degree murder beyond a reasonable doubt and to the
> exclusion of every reasonable hypothesis of innocence in the purely
> circumstantial evidence case against him.
>     The standard for review for sufficiency of the evidence to
> uphold a conviction is whether, viewing the evidence in the light
> most favorable to the prosecution, any rational trier of fact could
> conclude the state proved the essential elements of the crime and the
> defendant's identity as the perpetrator of that crime beyond a
> reasonable doubt.  In conducting this review, we also must be
> expressly mindful of Louisiana's circumstantial evidence test, which
> states in part, "assuming every fact to be proved that the evidence
> tends to prove, in order to convict," every reasonable hypothesis of
> innocence is excluded.  Where the key issue is the defendant's
> identity as the perpetrator, rather than whether or not the crime was
> committed, the state is required to negate any reasonable probability
> of misidentification.  **State v. Wright**, 98-0601 (La. App. 1st Cir.
> 2/19/99), 730 So.2d 485, 486-87, writs denied, 99-0802 (La.

10/29/99), 748 So.2d 1157, and **State ex rel. Wright v. State**, 00-0895 (La. 11/17/00), 773 So.2d 732.

    The crime of second degree murder, in pertinent part, is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1(A)(1). Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. **State v. Buchanon**, 95-0625 (La. App. 1st Cir. 5/10/96), 673 So.2d 663, 665, <u>writ denied</u>, 96-1411 (La. 12/6/96), 684 So.2d 923.

    In **State v. Mitchell**, 99-3342 (La. 10/17/00), 772 So.2d 78, the Louisiana Supreme Court set forth the following precepts for appellate review of circumstantial evidence in connection with review of the sufficiency of the evidence:

> On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently **reasonable** that a rational juror could not have found proof of guilt beyond a reasonable doubt.
>
>     The jury is the ultimate factfinder of "whether a defendant proved his condition and whether the state negated that defense." The reviewing court "must not impinge on the jury's factfinding prerogative in a criminal case except to the extent necessary to guarantee constitutional due process." (Citations omitted).

**Mitchell**, 772 So.2d at 83. Further, the **Mitchell** Court cautioned:

> "The actual trier of fact's *rational* credibility calls, evidence weighing, and inference drawing are preserved ... by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." The reviewing court is not called upon to determine whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Rather, the court must assure that the jurors did not speculate where the evidence is such that reasonable jurors must have a reasonable doubt. The reviewing court cannot substitute its idea of what the verdict should be for that of the jury. Finally, the "appellate court is constitutionally precluded from acting as a 'thirteenth juror' in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact." (Citations omitted).

**Mitchell**, 772 So.2d at 83.

A thorough review of the record indicates the evidence presented, viewed in the light most favorable to the state, proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder and the defendant's identity as the perpetrator of that offense. Evaluating the evidence in the light most favorable to the state, we do not find the defendant's hypothesis that someone other than the defendant strangled and beat the victim to death is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Moreover, based upon the defendant's untruthfulness during the investigation of the offense, it would have been reasonable for the jury to find he was not credible, and thus, completely reject the innocent explanations he offered for his actions surrounding the victim's killing. See **State v. Booker**, 02-1269 (La. App. 1st Cir. 2/14/03), 839 So.2d 455, 464, writ denied, 03-1145 (La. 10/31/03), 857 So.2d 476. Purposeful misrepresentation reasonably raises the inference of a guilty mind. See **Mitchell**, 772 So.2d at 85.

This assignment of error is without merit.[21]

---

[21] State v. Davis, No. 2004-KA-1773, at pp. 7-9. The Louisiana Supreme Court later denied petitioner's related writ application. State v. Davis, 924 So.2d 164 (La. 2006) (No. 2005-K-1799).

– 23 –

The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319). "The Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does not apply in a federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008).

A sufficiency of the evidence argument presents a mixed question of law and fact. Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). Therefore, this Court must defer to the state court's decision rejecting petitioner's claim unless that decision "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."  28
U.S.C. § 2254(d)(1).

      For the reasons noted by the Louisiana First Circuit Court of Appeal, any rational
trier of fact, after viewing the evidence in the light most favorable to the prosecution, easily could
have found that the evidence was sufficient to convict petitioner of the crime charged.  Accordingly,
under the AEDPA's deferential standard, this Court likewise rejects petitioner's claim challenging
the sufficiency of the evidence.

<u>Expert Testimony</u>

      Petitioner's next claim is that the trial court erred in allowing the unqualified expert
testimony of Michael Dicharry regarding the search and rescue dog's detection of petitioner's scent
at the scene of the crime.  Petitioner contends that Dicharry's experience was insufficient to support
a finding that he was an expert.  Petitioner also contends that the dog, Jake, was trained to detect the
absence, not the presence, of human scent.  Petitioner opines that it was unduly prejudicial for the
testimony to come in as expert testimony, in that Dicharry and Jake were unqualified.

      At trial, prior to being allowed to testify, Dicharry was questioned extensively
regarding the training both he and the dog had received.[22]  Dicharry stated that he became a
"certified search and rescue technician" in 2000, had trained with canine handlers from the
Louisiana Department of Public Safety and Corrections, and had attended annual seminars held by
the National Blood Hound Training Institution and others.  Jake was certified by the National Search

---

[22]  State Rec., Vol. V of V, trial transcript, pp. 427-53.

and Rescue Association in 2001.[23]  Contrary to petitioner's assertion, Dicharry stated that Jake was in fact trained to locate a person's scent.[24]  After much testimony, discussion, and consideration of the qualifications of both Dicharry and Jake, the trial judge ruled that Dicharry would be accepted "as an expert in the handling of dogs, specifically with the purpose of differentiation of human scents."[25]

The United States Fifth Circuit Court of Appeals has held:  "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law."  Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).  Therefore, to the extent that petitioner is arguing that the state courts merely misapplied state evidence law, his claim is not reviewable in this federal proceeding.

---

[23]  State Rec., Vol. V of V, trial transcript, p. 428.

[24]  Dicharry testified:

> Jake is trained to be a scent discrimination dog and what that means is I can introduce him to a human scent and he will, from that point on, once we start the search, he will attempt to locate that scent.  He will ignore all other human scents.  He will focus just on that one scent and in our work, we have numerous applications for that.  He will – if he finds a trial [sic] where a person has walked, they will leave a scent where they have walked.  He will identify strong concentrations of scent from a person being in one location for an extended period of time or person being in physical contact with any surface for a period of time.

State Rec., Vol. V of V, trial transcript, p. 428.

[25]  State Rec., Vol. V of V, trial transcript, p. 453.

To the extent that petitioner is arguing that the evidentiary ruling affected his federal constitutional rights, that claim has no merit.  The United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause.   The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

In the instant case, even if the challenged evidence had been wrongfully admitted into evidence, it nevertheless cannot be said that its admission resulted in a denial of fundamental fairness.  For example, Dicharry's testimony was at best cumulative evidence of facts established by other means.  Dicharry testified that Jake signaled that he detected petitioner's scent on the driver's door handle of the victim's car, on the front left of the victim's car, from the victim's car to the front door of the victim's home, in the front room of the victim's home, and in the back bedroom of the victim's home.  However, it was *undisputed* that petitioner was in all of those places on the day the murder; petitioner admitted as much in *his own testimony* at trial.[26]  Accordingly, petitioner simply cannot demonstrate that Dicharry's testimony played a crucial, critical, and highly significant role in the conviction.

---

[26] See, e.g., State Rec., Vol. V of V, trial transcript, pp. 530 and 533.

Prosecutorial Misconduct

      Petitioner next claims that the prosecutor engaged in misconduct by making improper comments.  Petitioner contends that, for example, the prosecutor vouched for the credibility of the state's witnesses, made misleading arguments, and offered personal opinions.

      It is true that it is improper for a prosecutor to vouch for a witness' credibility or to express an opinion as to the defendant's guilt *if* there is underlying an implication that the prosecutor's statements are based on additional personal knowledge about the witness or the facts of the case that are in not in evidence.  See, e.g., United States v. Munoz, 150 F.3d 401, 414-15 (5th Cir. 1998); Richthofen v. Cain, Civ. Action No. 05-5701, 2008 WL 630477, at *49 n.81 (E.D. La. Mar. 7, 2008); Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *9 (E.D. La. Dec. 19, 2007).  However, such comments are not necessarily improper where it is apparent to the jury that the views are based on the evidence presented at trial rather than on personal knowledge of facts outside the record.  See, e.g., Nichols v. Scott, 69 F.3d 1255, 1282-83 (5th Cir. 1995); Richthofen, 2008 WL 630477, at *49 n.81; Spicer, 2007 WL 4532221, at *9.  In the instant case, when the comments in question are reviewed in context and in their entirety, it is evident that the prosecutor's statements were not inappropriate but rather were permissible commentary concerning the evidence at trial.

      Further, in any event, the United States Fifth Circuit Court of Appeals has held:

      Even if ... [a] prosecutor's remarks [are] improper, prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair.  Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so

> insubstantial that (in probability) but for the remarks no conviction
> would have occurred.

Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002) (internal quotation marks, ellipsis, and footnote

omitted); see also Jones v. Butler, 864 F.2d 348 (5th Cir. 1989).  In other words, a prosecutor's

remarks warrant *habeas* relief only if they were "a crucial, critical, highly significant factor upon

which the jury based its verdict."  Harris, 313 F.3d at 245.  In the instant case, the Court has no

hesitation in concluding that there is no probability that the prosecutor's comments played any part

whatsoever in the conviction.

Judicial Bias

Petitioner also claims that the trial judge was biased.  In support of his claim,

petitioner points to the fact that the trial judge refused the request for a new defense attorney and

took no action *sua sponte* to rein in the allegedly overzealous prosecutor during trial.

Regarding claims of judicial bias, the United States Fifth Circuit Court of Appeals

recently noted:

> Defendants in the American judicial system have the right to
> a fair trial, and part of this right is fulfilled by a judicial officer who
> impartially presides over the trial.  However, most questions
> concerning a judge's qualifications to hear a case are not
> constitutional ones, because the Due Process Clause of the Fourteenth
> Amendment establishes a constitutional floor, not a uniform standard.
> A judge will, however, violate a defendant's due process rights if he
> is biased against the defendant or has an interest in the outcome of
> the case.  A likelihood or appearance of bias can disqualify a judge
> as well.  A criminal defendant tried by a partial judge is entitled to
> have his conviction set aside, no matter how strong the evidence
> against him.
> Bias is a difficult claim to sustain under AEDPA because the
> Supreme Court's case law on bias has acknowledged that what
> degree or kind of interest is sufficient to disqualify a judge from

– 29 –

sitting cannot be defined with precision.  Generally, the Supreme Court has recognized two kinds of judicial bias:  actual bias and presumptive bias.

Almost every bias case before the Supreme Court that has found a due process violation has done so based on presumptive bias. There are three situations in which the Supreme Court has found presumptive bias:

> (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

Buntion v. Quarterman, 524 F.3d 664, 672 (5th Cir. 2008) (citations, quotation marks, and brackets omitted).

Because petitioner's allegations against the trial judge in the instant case do not involve any of the established bases for presumptive bias, the instant claim implicates only the prohibition against actual bias.  See id. at 673.  However, as one federal court noted:

> On federal habeas review of a state trial judge's conduct, the issue is not the presence of judicial misconduct.  Rather, the issue is whether, in the context of the trial as a whole, the judge's behavior rendered the trial so fundamentally unfair as to violate due process. Although due process is presumed to be violated where there is actual bias or a factual basis for bias on the part of the judge, the Court must otherwise presume the judge's honesty and integrity. *Judicial rulings alone almost never constitute a valid basis for bias or a partiality motion.*

Chamberlain v. Pliler, 307 F.Supp.2d 1128, 1145 (C.D. Cal. 2004) (emphasis added; citations, quotation marks, and brackets omitted).  Petitioner's allegations simply are not sufficient to show

actual bias.  Accordingly, he has not met his burden of proof and, therefore, he is not entitled to relief based on this claim.

Pretrial Statement

The final claim asserted herein is that the trial court erred in denying petitioner's motion to suppress his pretrial statement.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> [T]he defendant contends the trial court erred in failing to suppress his statement that was taken under duress, following an illegal arrest, and which was not knowingly or voluntarily made.
>
> Prior to trial, the defense moved to suppress for use as evidence the defendant's statement to police, alleging the statement was inadmissible because it was not made freely and voluntarily, but rather was made under the influence of fear, duress, intimidation, menaces, threats, inducements, and/or without the defendant being advised of his right to remain silent, right to counsel, and other constitutional rights.  Following a hearing, the motion was denied.  The defense applied to this court for writs of certiorari, prohibition, and mandamus, and following a thorough review of the issue, writs were denied.
>
> In this post-trial appeal, judicial efficiency demands that this court accord great deference to its pre-trial decision on admissibility, unless it is apparent, in light of the subsequent trial record, that the determination was patently erroneous and produced an unjust result. **State v. Haynes**, 99-1973 (La. App. 1st Cir. 6/23/00), 762 So.2d 1247, 1253, <u>writ denied</u>, 00-2243 (La. 6/15/01), 793 So.2d 1236.  A thorough review of the evidence introduced at trial convinces us that our pre-trial determination in this matter was not patently erroneous and did not produce an unjust result.
>
> This assignment of error is without merit.[27]

---

[27] <u>State v. Davis</u>, No. 2004-KA-1773, at pp. 9-10.  The Louisiana Supreme Court later denied petitioner's related writ application.  <u>State v. Davis</u>, 924 So.2d 164 (La. 2006) (No. 2005-K-1799).

To the extent that petitioner is alleging that his statement should have been suppressed because it followed an illegal arrest, that claim arises under the Fourth Amendment. See Dunaway v. New York, 442 U.S. 200 (1979); Jones v. Johnson, 171 F.3d 270, 277-78 (5th Cir. 1999). However, such Fourth Amendment claims are barred in a *habeas corpus* proceeding by Stone v. Powell, 428 U.S. 465 (1976). In Stone, the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). The Stone bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous. Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

In the instant case, defense counsel filed motion to suppress the statement and an evidentiary hearing was held on that motion. When the motion was denied, a pretrial writ application was filed, considered, and denied on the merits. Further, the suppression issue was again raised and considered on direct appeal. Based on the foregoing, it is clear that petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state court. Therefore, Stone bars this Court from granting petitioner relief based on that claim. Cardwell v. Taylor, 461 U.S. 571 (1983); Jones, 171 F.3d at 278.

To the extent that petitioner is alleging a Fifth Amendment claim that his statement was *involuntary*, that claim also fails. Because the voluntariness of a statement is a mixed question of law and fact, a federal *habeas* court must defer to the state court's decision rejecting such a claim

unless the petitioner demonstrates that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Soffar v. Cockrell</u>, 300 F.3d 588, 592 (5th Cir. 2002). For the following reasons, it is evident that petitioner has made no such showing.

In a federal *habeas corpus* proceeding, it is the petitioner who bears burden of proving facts which would lead the Court to conclude that his statement was involuntary. <u>Uresti v. Lynaugh</u>, 821 F.2d 1099, 1103 (5th Cir. 1987). Petitioner clearly has fallen far short of meeting that burden in this case. In fact, he has offered nothing other than his own conclusory and self-serving statements to demonstrate the purported involuntary nature of the statement. On the other hand, the record contains a rights form initialed and signed by petitioner prior to his statement being given.[28]

---

[28] In that form, petitioner made the following acknowledgments:

    1. That I have the right to remain silent.

    2. That anything I say can be used against me in a court of law.

    3. That I can decide at any time to exercise my right to remain silent and not answer any questions or make any statements.

    4. That I have the right to talk to a lawyer and have him present with me while I am being questioned.

    5. That if I cannot afford to hire a lawyer, one will be appointed to represent me, free of charge, before I am questioned.

    A. No one is denying me of my rights, threatening, or mistreating me, either by word or act to force me to answer any questions. No one is giving, offering, or promising me anything whatsoever to make any statement. Any statement I do make will be voluntarily of my own free will and accord.

    B. I knowingly and purposely waive my right to the advice and presence of a lawyer

Additionally, the transcript of the taped statement establishes that he was again advised of his rights at the time that statement was given, and it is clear from that transcript that he gave the statement voluntarily and without coercion.[29]  There is simply no basis for a finding that the statement was involuntary.  Accordingly, the Court should reject petitioner's Fifth Amendment claim as meritless.

### **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Arthur Davis be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this eighth day of August, 2008.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

while I am being questioned and I understand that at anytime I decide to exercise my right to a lawyer that all questioning will be stopped and I will not be denied my request for a lawyer.

State Rec., Vol. I of V.

[29]  State Rec., Vol. I of V.